UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                  Case No: 6:23-cv-1043-CEM-DCI

MARY JANE FACCIPONTI and
JOANN SORENSEN,

      Defendants.

REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** The United States' Motion for Default Judgment (Doc. 34)
>
> **FILED:** March 1, 2024
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**.

### I. Background

The United States brought this case against Lillian Shiffman (Shiffman), Mary Jane Facciponti (Facciponti), and Joanne Sorensen (Sorensen) for fraudulent transfers pursuant to 28 U.S.C. §§ 3304(B)(1)(A) and (B) and 28 U.S.C. § 3307(B). Doc. 1 (the Complaint). Defendants did not file an answer or otherwise respond to the Complaint. By separate orders, the Court granted the United States' Motions for Clerk's Entry of Default. Docs. 16-18, 21-23.

The United States subsequently filed a Motion for Default Judgment Against Facciponti and Sorenson pursuant to Federal Rule of Civil Procedure 55(b). Doc. 24 (the Initial Motion).

The undersigned denied the Initial Motion because the United States did not demonstrate proper service of process. Doc. 25. The United States then filed its Second Motion for Default Judgment Against all Defendants. Doc. 28 (the Second Motion). Defendants did not respond to the Second Motion and the time for doing so elapsed. Without opposition, the Court adopted the undersigned's recommendation to grant the Second Motion in part to the extent that the United States established jurisdiction, proper service of process, and liability. Docs. 30, 32. The Court denied the remainder of the Second Motion and permitted the United States to renew the request. Doc. 32.

The United States has since voluntarily dismissed Shiffman as a named Defendant (Doc. 33, 25) and has filed the latest Motion for Default Judgment against Defendants Facciponti and Sorensen on the issue of damages. Doc. 34 (the Motion). Again, Defendants have not filed a response and the time for doing so has elapsed.

Upon due consideration, the undersigned recommends that the Motion be granted in part.

**II.     Standard**

Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Court has already found that the United States is entitled to default judgment under Federal Rule of Civil Procedure 55 to the extent that it established jurisdiction, adequate service of process, and liability.

Since the United States is entitled to default judgment, then the Court must consider whether the United States may receive the requested relief. If a plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought

in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations related to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).

Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

### III. Discussion

As an initial matter, the undersigned recommends that an evidentiary hearing on the issue of damages is not necessary because the record contains sufficient information to mathematically ascertain the amount of damages in this case. With respect to damages in a fraudulent transfer case, the United States may avoid the transfer, seek recovery against the asset fraudulently

transferred, or receive a money judgment against the transferee. 28 U.S.C. §§ 3306, 3307;[1] *see also United States v. Mendez*, 2022 WL 1238655, at *4 (M.D. Fla. Feb. 7, 2022) ("Under the FDCPA, the United States may avoid the transfer, seek recovery against the asset fraudulently transferred, or receive a money judgment against the transferee.").

Here, the United States has elected to obtain a money judgment against the transferees—Defendants Facciponti and Sorensen—and requests that the Court enter default against Defendant Facciponti in the amount of $780,500.00 and Defendant Sorensen in the amount of $650,000.00, plus pre- and post-judgement interest from the time of the transfers at issue. Doc. 34. The United States adds that "to avoid 'double dipping' damages, the United States will decrease the amount of Facciponti or Sorensen's liability by the amount the other defendant pays against the judgment

---

[1] Section 3306—Remedies of the United States—provides:
> (a) In general. In an action or proceeding under this subchapter [28 USCS §§ 3301 et seq.] for relief against a transfer or obligation, the United States, subject to section 3307 [28 USCS § 3307] and to applicable principles of equity and in accordance with the Federal Rules of Civil Procedure, may obtain—
>> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;
>> (2) a remedy under this chapter [28 USCS §§ 3301 et seq.] against the asset transferred or other property of the transferee; or
>> (3) any other relief the circumstances may require.

Section 3307—Defenses, liability, and protection of transferee—provides:
> (b) Limitation. Except as provided in subsection (d), to the extent a transfer is voidable in an action or proceeding by the United States under section 3306(a)(1) [28 USCS § 3306(a)(1)], the United States may recover judgment for the value of the asset transferred, but not to exceed the judgment on a debt. The judgment may be entered against—
>> (1) the first transferee of the asset or the person for whose benefit the transfer was made; or
>> (2) any subsequent transferee, other than a good faith transferee who took for value or any subsequent transferee of such good-faith transferee.

entered against her, and the United States will mark the judgment against Sorensen satisfied if Facciponti pays the amount owed by Sorensen toward the judgment against Facciponti." *Id*. at 4.

In support of the request for default judgment, the United States points to bank account records it obtained from Wells Fargo and Truist Financial[2] as well as declarations from the bank records' custodians. *Id*. The United States contends that the records establish the amount of Shiffman's transfers to Defendant Facciponti and Defendant Facciponti's subsequent transfers to Defendant Sorensen. *Id*. Since the undersigned agrees with the United States that the documents are admissible as business records,[3] the undersigned will examine the exhibits as they relate to Defendants Facciponti and Sorensen respectively.

**A. Defendant Facciponti**

The United States contends that the pertinent records show that Shiffman transferred $780,500.00 from bank accounts over which she had signature authority to bank accounts which Defendant Facciponti owned. Doc. 34 at 6. The United States represents that the following accounts are relevant to the amounts claimed against Defendant Facciponti:

- Wells Fargo account ending in 5370 (account 5370)—Defendant Facciponti sole owner at the time of transfers from Shiffman (Docs. 34-3 to 34-6);

---

[2] The United States explains that although Defendants had accounts with SunTrust Bank, the records originally created by that entity are a part of Truist Financial's records. Doc. 34 at 5. Truist Financial exists as a result of a merger between SunTrust Bank and BB&T bank. *Id*. at 5.

[3] The United States submits declarations from Wells Fargo and Truist custodians certifying the bank records at issue. Docs. 34-1, 34-9. The United States contends that the documents meet all of the requirements of Federal Rules of Evidence 803(6) and 902(11) and are, therefore, admissible evidence. Doc. 34 at 5. Indeed, "evidence does not violate the rule against hearsay if it complies with the requirements of Rules 801 through 807 of the Federal Rules of Evidence" and "[a plaintiff's] evidence is sufficiently authenticated if it complies with Rules 901 through 903 of the Federal Rules of Evidence." *Bivens v. Cooper*, 2021 WL 5237236, at *1 (M.D. Ala. Nov. 10, 2021). Without objection via a response, the undersigned accepts the United States' exhibits offered in support of the Motion.

- Wells Fargo account ending in 4641 (account 4641)—Defendant Facciponti sole owner at the time of transfers from Shiffman (Docs. 34-2);

- Wells Fargo account ending in 1773 (account 1773)—Shiffman owner at the time of the transfers to Defendant Facciponti;[4] and

- Wells Fargo account ending in 3107 (account 3107)—the names "L Shiffman" and "M. J. Facciponti" are listed at the top of a check image (Doc. 34-7).[5]

Based on these records, the United States claims, without opposition, that Shiffman made the following transfers to Defendant Facciponti:

- July 28, 2017 to September 15, 2017—8 transfers in the amount of $1,000.00 ($8,000) from account 1773 to account 5370 (Doc. 34 at 6, citing Docs. 34-3, 34-4, 34-5);[6]

- August 21, 2017—$100,00.00 from account 1773 to account 5370 (Doc. 34 at 7, citing Docs. 34-1, 34-4);[7]

- September 18, 2017—$350,000.00 from account 1773 to the account 5370 (Doc. 34 at 7, citing Docs. 34-1, 34-5);[8]

---

[4] The United States has not included records from account 1773. *See* Doc. 34. However, other records reflect the transfers from account 1773 and the name "Shiffman." *See e.g.*, Doc. 34-5 at 3. The Wells Fargo Business Records Declaration also reflects the transfers from account 1773. Doc. 34-1.

[5] The United States provides a check image from an account ending in 3107. Doc. 34-7. Shiffman purportedly signed the check and made it payable to Mary Jane Facciponti. *Id*. The name "Mary J Facciponti" appears on the endorsement of the check. Doc. 34-7.

[6] The eight entries for "Recurring Transfer[s] from Shiffman L Savings [Ref #] xxxxxx1773" are as follows: (1) one $1,000.00 transfer in July 2017 (Doc. 34-3); (2) four separate $1,000.00 transfers in August 2017 (Doc. 34-4); and (3) three separate $1,000.00 transfers in September 2017 (Doc. 34-5).

[7] Docs. 34-1 and 34-4 show a "debit from account 1773 credit to account 5370" on August 21, 2017 in the amount of $100,000.00.

[8] Docs. 34-1 and 34-5 show a "debit from account 1773 credit to account 5370" on September 18, 2017 in the amount of $350,000.00.

- October 2, 2017—$200,000.00 from account 1773 to account 5370 (Doc. 34 at 7, citing Docs. 34-1, 34-6);[9]

- October 13, 2017—online transfer of $100,000.00 from account 1773 to account 5370 (Doc. 34 at 7, citing Docs. 34-1, 34-6);[10]

- October 13, 2017—online transfer of $8,500.00 from account 1773 to account 4641 (Doc. 34 at 7, citing Docs. 34-1, 34-2);[11]

- January 2, 2018—Shiffman signed a $14,000.00 check made out to Defendant Facciponti from account 3107 (Doc. 34 at 7, citing Doc. 34-7); and

- March 2, 2018—Defendant Facciponti cashed $8,000.00 of the January 2, 2018 check (Doc. 34-7) and deposited the remaining $6,000.00 into account 5370 (Doc. 34-7, citing Docs. 34-7, 34-8).[12]

Based on the foregoing transactions, the United States asserts that Shiffman made $780,500.00 in fraudulent transfers to Defendant Facciponti. Doc. 34 at 8. Having considered the unopposed exhibits the United States offers in support of its request for judgment, the undersigned is satisfied that the United States has demonstrated that the amount of damages sought are mathematically calculable through the series of bank transfers reflected in the record. As such, the undersigned recommends that under the plain terms of the FDCPA, the United States is entitled to a money judgment in the amount of $780,500.00 against Defendant Facciponti.

---

[9] Docs. 34-1 and 34-6 show a "debit from account 1773 credit to account 5370" on October 2, 2017 in the amount of $200,000.00.

[10] Docs. 34-1 and 34-6 show a "debit from account 1773 credit to account 5370" on October 13, 2017 in the amount of $100,000.00.

[11] Docs. 34-1 and 34-2 show that "[t]here is a transfer from account 1773 into account 4641" on October 13, 2017 in the amount of $8,500.00.

[12] Doc. 34-7 shows "cash out" and "Request" for $8,000.00. Doc. 34-8 shows an "Edeposit" into account 5370 on March 2, 2018 in the amount of $6,000.00.

### B. Defendant Sorensen

The United States argues that Defendant Sorensen is liable as a subsequent transferee because she is not a good-faith transferee who took for value. Doc. 34 at 8, citing 28 U.S.C. § 3307(b)(2). The United States argues that Defendant Sorensen is liable in the amount of $650,000.00 because she and Facciponti jointly controlled that sum. *Id*. In total, the United States claims that Defendant Facciponti made four transfers to accounts under Defendants Facciponti and Sorensen's joint control. According to the United States, the transfers were made from Truist Bank accounts ending in 4869 (joint account 4869) and 4851 (joint account 4851). Doc. 34 at 9, citing Docs. 34-12, 34-14.[13] Specifically, the United States asserts that Defendant Facciponti made the following transfers:

- September 18, 2017—$200,000.00 from account 5370 to joint account 4851 (Doc. 34 at 7, citing Docs. 34-10, 34-11);[14]

- September 18, 2017—$150,000.00 from account 5370 to joint account 4869 (Doc. 34 at 9, citing Docs. 34-12, 34-13)[15];

- October 2, 2017—$200,000.00 from account 5370 to joint account 4851 (Doc. 34 at 9, citing Docs. 34-14, 34-15);[16] and

---

[13] Doc. 34-12 is the September 27, 2017 statement for joint account 4869 for "Mary J Facciponti or Joann Sorensen." Doc. 34-12 is a statement from SunTrust. *Id*. Doc. 34-14 is the October 31, 2017 statement for joint account 4851 for "Mary J Facciponti or Joann Sorensen." Doc. 34-14 is also a statement from SunTrust. *Id*.

[14] Doc. 34-10 shows a deposit on September 18, 2017 into joint account 4851 in the amount of $200,000.00. Doc. 34-11 is a deposit ticket for $200,000.00 into joint account 4851 with an attached check image from account 5370.

[15] Doc. 34-12 shows a deposit on September 18, 2017 into joint account 4869 in the amount of $150,000.00. Doc. 34-13 is a deposit ticket for $150,000.00 into joint account 4869 with an attached check image from account 5370.

[16] Doc. 34-14 shows a deposit on October 2, 2017 into joint account 4851 in the amount of $200,000.00. Doc. 34-15 is deposit ticket for $200,000.00 into joint account 4851 with an attached check image from account 5370.

- October 13, 2017—$100,000.00 from account 5370 to joint account 4851 (Doc. 34 at 9, citing Docs. 34-14, 34-16).[17]

Based on the foregoing transactions, the United States asserts that Sorensen is liable to the United States as a subsequent transferee for fraudulent transfers totaling $650,000.00. Doc. 34 at 9. Having considered the unopposed exhibits the United States offers in support of its request for judgment, the undersigned is satisfied that the United States has demonstrated that the amount of damages sought are mathematically calculable through the series of bank transfers reflected in the record. As such, the undersigned recommends that under the plain terms of the FDCPA, the United States is entitled to a money judgment in the amount of $650,000.00 against Defendant Sorensen.

**C. Interest**

The United States also seeks both pre- and post-judgment interest from the time of the transfers. Doc. 34 at 2, 10. The undersigned recommends that the request is due to be denied as the United States has not stated a basis for the request. Namely, the United States' brief is insufficient because it provides no citation to law authorizing entitlement to either pre- or post-judgment interest nor does it address the appropriate accrual, rate, and calculation of the interest. *See* Local Rule 3.01(a). As such, there is nothing before the Court regarding the method of calculation for the interest, or the interest rate the Court should apply to calculate either the pre- or post-judgment amount.

Also, the United States provides no justification for the requested starting point for the calculation. The failure to provide this analysis is especially concerning because it does not appear that the United States would be entitled to *both* pre- *and* post-judgment interest *from the time of*

---

[17] Doc. 34-14 shows a deposit on October 13, 2017 into joint account 4851 in the amount of $100,000.00. Doc. 34-16 is a deposit ticket for $100,000.00 into joint account 4851 with an attached check image from account 5370.

*the transfers*, as the United States apparently requests. "[T]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss *from the time between the ascertainment of the damage and the payment by the defendant*." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836-37 (1990) (emphasis added). It may be that the United States meant to differentiate between the time pre-judgment interest begins versus post-judgment interest, but the undersigned will make no assumptions with zero briefing on this specific request.

Accordingly, the undersigned recommends that the Court decline the United States' request for interest or, alternatively, direct supplemental briefing on that issue.

### IV. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that:

1. the United States' Motion (Doc. 34) be **GRANTED in part** to the extent that the United States be awarded default judgment in damages against Defendant Facciponti in the amount of $780,500.00 and Defendant Sorensen in the amount of $650,000.00. If either Defendant pays toward that Defendant's individual judgment, then the United States shall decrease the amount of the remaining liability owed for both Defendants;[18] and

2. the remainder of the Motion (Doc. 34) be **DENIED**, including the request for interest or, alternatively, that the United States be directed to file supplemental briefing in support of its the pre- and post-judgment interest demand.

---

[18] In effect, it appears that the United States requests that Defendants be jointly and severally liable for $650,000 and that Defendant Facciponti be liable for an additional $130,500.

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on April 22, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy